IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01972-PAB-MEH

JUSTIN WALKINSHAW,

 Plaintiff,

v.

USAA CASUALTY INSURANCE COMPANY,

 Defendant.

---

# ORDER

---

This matter is before the Court on Defendant USAA CIC's Motion for Summary Judgment [Docket No. 71] and Plaintiff's Motion for Partial Summary Judgment [Docket No. 72]. Defendant seeks summary judgment on all of plaintiff's claims, Docket No. 71 at 1, and plaintiff seeks summary judgment on his breach of contract claim. Docket No. 72 at 7. The parties responded to each other's motions, Docket Nos. 75 and 74, respectively, and replied. Docket Nos. 78 and 79, respectively. The Court has jurisdiction under 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This dispute concerns whether plaintiff's homeowner's insurance policy provides coverage for personal property damage caused by asbestos contamination. Defendant issued a homeowner's insurance policy to plaintiff that provides dwelling and personal property protection for property located in Denver, Colorado. Docket No. 71 at 3, ¶ 1.

---

[1] All facts are undisputed unless otherwise noted.

As to the dwelling protection, the policy provides "all-risk protection" subject to specified exclusions. *Id.*, ¶ 2. The policy states that defendant will "insure against 'sudden and accidental,' direct, physical loss to" the property "unless [the loss] is excluded" by the terms of the policy. *Id.* As to the personal property protection, the policy provides "named-peril protection" subject to certain exclusions and states that defendant will "insure against 'sudden and accidental,' direct, physical loss to tangible property . . . caused by a peril listed," unless the loss is otherwise excluded. *Id.*, ¶ 3. The policy lists 16 covered perils, including "[v]ehicles, meaning damage caused by or resulting from an impact with a motor vehicle." *Id.* at 3–4, ¶ 4. The policy does not list contaminants, pollutants, or asbestos as a peril. *Id.* The policy also states that "[n]eglect, by or failure of any 'insured' to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in the loss or damage" is an excluded cause of personal property damage, and the policy requires that an insured "[p]rotect the property from further damage." *Id.* at 4, ¶¶ 6–7. In addition, the policy lists personal property losses that defendant does not cover; asbestos is not included on this list. Docket No. 72 at 4, ¶ 13.

On June 19, 2018, an intoxicated driver crashed his car into a car parked near plaintiff's home, which caused the parked car to crash into plaintiff's home. Docket No. 71 at 4, ¶ 8. Plaintiff notified defendant of the collision the same day. *Id.* at 7, ¶ 20; *see also* Docket No. 72 at 3, ¶ 3. The collision damaged the guest bedroom of plaintiff's house as well as personal property inside that room. Docket No. 71 at 5, ¶ 9. The collision caused portions of the exterior wall of plaintiff's guest bedroom to land

directly on top of an HVAC supply vent on the floor inside the home. Docket No. 71 at 5–6, ¶ 14; Docket No. 72 at 3, ¶ 4.[2]

On June 21, 2018, Anthony Gonzalez, a contractor with Repairs Unlimited, inspected the property and prepared an initial estimate, which included fees to test for asbestos and lead. Docket No. 71 at 5, ¶ 10. Plaintiff understood that the property would need to be tested for asbestos before construction could begin on any repairs. *Id.*, ¶ 11. On June 28, 2018, Element Building Services ("Element") tested the property for asbestos, and, on June 29, 2018, Mr. Gonzalez informed plaintiff that the property tested "hot" for asbestos and would require further testing to determine the extent of the contamination. *Id.*, ¶ 12. On July 3, 2018, Element tested the property again and, on July 10, 2018 issued a report indicating that testing detected asbestos on a bookcase in a guest room and inside the HVAC supply duct located outside of the area immediately impacted by the collision. *Id.*, ¶¶ 13–14. As a result of the asbestos detected in the HVAC duct that supplied air to the house, Element recommended treating the entire property as an asbestos spill site. Docket No. 71 at 5–6, ¶ 14.[3] Mr. Gonzalez

---

[2] Although plaintiff admits that it the debris landed on a supply vent, *see* Docket No. 72 at 3, ¶ 4; Docket No. 71 at 5–6, ¶ 14, plaintiff claims that the vent supplied air to the house, not to a room otherwise unaffected by the collision. Docket No. 72 at 6, ¶ 10.

[3] There is a dispute in the briefing whether Element recommended treating the property as an asbestos spill site because of the presence of asbestos fibers in the HVAC duct that supplied air to a room "not impacted by the collision," *see* Docket No. 74 at 6, ¶ 10, or whether it was because of the presence of fibers in the HVAC duct that "supplied air to the house." *See* Docket No. 79 at 6, ¶ 10. This does not appear to be a genuine dispute, however, as plaintiff admits that the contaminated HVAC duct that prompted Element to recommend treating the property as a spill site was not located in the guest room where the vehicle crashed into the property but rather was in the bathroom, which is next to the guest room and which did not have direct exposure to

3

immediately informed plaintiff and defendant of Element's findings. *Id.* at 6, ¶ 15.

Following the collision, and before the additional asbestos testing on July 3, 2018, plaintiff's fiancée ran the HVAC system to warm the house on a "chilly morning," which was not unusual because plaintiff keeps the thermostat at 72 degrees year round. *Id.*, ¶¶ 16–17; *see also* Docket No. 72 at 3, ¶ 6. The heat most likely ran between June 25 and July 2. Docket No. 74 at 7, ¶ 12. While plaintiff admits that neither he nor his fiancée turned off the HVAC system to ensure that it did not run before July 10, 2018, Docket No. 71 at 6, ¶ 18, defendant admits that, upon learning of the asbestos spill in plaintiff's home on July 8, 2018, plaintiff immediately stopped using the HVAC system, ceiling fans, and the swamp cooler. Docket No. 72 at 3, ¶ 8.

At the time of the denial letters and correspondence in August 2018, plaintiff did not understand, and was not told, that the use of the HVAC system after the collision caused asbestos to spread through his home. Docket No. 75 at 5, ¶ 1; Docket No. 72 at 6, ¶ 20. He was not told to refrain from using the HVAC system and testified that he did not know that the home's HVAC system was cause for concern until July 8, 2018. Docket No. 72 at 3, ¶ 7;[4] Docket No. 75 at 5–6, ¶ 4.[5] Plaintiff thought that the spread of

---

the impact site. Docket No. 74 at 6–7, ¶ 11.

[4] Defendant admits that plaintiff testified to this but denies that plaintiff did not know that the HVAC system was cause for concern until July 8 because he had been told of the need to test for and the presence of asbestos at the impact site. Docket No. 74 at 2, ¶ 7.

[5] The parties dispute whether plaintiff acted reasonably. Plaintiff states that he believed it was reasonable to continue using his HVAC and other air circulation systems after the collision and that he was not aware that there was asbestos in the HVAC system before he was told. *Id.* Defendant denies that plaintiff did not have reason to know "that the HVAC was a cause for concern because he had been informed of both

the asbestos in his home was caused by the collision itself.  Docket No. 75 at 5, ¶ 1; Docket No. 72 at 6, ¶ 20.  Defendant's adjuster stated that he was not aware of any documentation from defendant to plaintiff that communicated that the operation of plaintiff's HVAC system was the reason defendant denied the majority of his personal property claim.  Docket No. 75 at 5, ¶ 2; Docket No. 72 at 6, ¶ 21.

Environmental Construction Specialists ("ECS") owner Brandon Jacobs, who performed the asbestos abatement at the property, testified that running the HVAC system after the collision caused asbestos to spread throughout the property.  Docket No. 71 at 6–7, ¶ 19.  Mr. Jacobs also testified that "it's unrealistic to expect someone who has no idea they have asbestos in their home after someone crashed into their bedroom to think, oh, I better restrict this area and turn off my HVAC."  Docket No. 75 at 6, ¶ 5 (quoting Docket No. 75-2 at 1–2, 51:23–52:3).

Defendant paid insurance benefits to plaintiff for all damage to the dwelling. Docket No. 71 at 7, ¶ 21.[6]  Plaintiff, however, also sought coverage for loss to personal property, which personal property included items located in rooms other than where the

---

the need to test for asbestos two days after the Collision and learned about the presence of asbestos at the impact site on June 29, 2018."  Docket No. 78 at 3, ¶ 4. Defendant also disputes that there was asbestos in the HVAC system before plaintiff's fiancée turned on the system between June 25 and July 2, 2018.  *Id.*

[6] Plaintiff purports to dispute this fact and says that there is no language related to dwelling coverage or that portion of the claim on the page of plaintiff's complaint that defendant cites.  Docket No. 75 at 4, ¶ 21.  Plaintiff's complaint, however, states, "USAA paid for the repairs to Plaintiff's home."  Docket No. 3 at 2, ¶ 12.  The Court therefore finds no genuine dispute as to this fact.

5

collision occurred. *Id.*, ¶ 22.[7] Such personal property had to be destroyed or cleaned due to contamination caused by airborne asbestos. *Id.* Defendant's adjuster informed plaintiff on August 13, 2018 that, while defendant would cover the entire portion of the damage to the dwelling, "[t]he problem is the [plaintiff's] contents (personal items) will not be covered as a result of the asbestos spill." Docket No. 72 at 5, ¶ 15. On August 14, 2018, the adjuster explained that defendant would not cover the asbestos contamination of personal property in the home because, although a vehicle impacting the house is listed as a named peril in the policy, asbestos is not. *Id.*, ¶ 16; Docket No. 74 at 7, ¶ 15 (plaintiff's fiancée was informed that "damage to contents caused by the collision, such as drywall and debris, was covered; whereas damage to contents caused solely by asbestos contamination was not covered").

On August 29, 2018, defendant paid plaintiff for damage to personal property in the room where the collision occurred. Docket No. 71 at 7, ¶ 23.[8] Defendant's adjuster confirmed that the personal property damaged in the room where the collision occurred

---

[7] Plaintiff purports to dispute this fact and states that he sought coverage for items that were "all damaged in the same manner, by drywall dust and debris (that turned out to include asbestos fibers) that entered the home as a result of [the] vehicle's impact to the wall." Docket No. 75 at 4, ¶ 22. Plaintiff does not appear to dispute, therefore, that he sought coverage for items both in the room where the impact occurred and located elsewhere in the property.

[8] Plaintiff admits that there was a "partial settlement" for a small amount of his personal property but disputes that defendant explained that it paid plaintiff for property only in the room directly damaged by the collision itself. Docket No. 75 at 4–5, ¶ 23. Though plaintiff states that he received no explanation when the payment was made, *see* Docket No. 72 at 5, ¶ 17, plaintiff states that he received an explanation letter by the following day with a list of items defendant covered. *See id.*, ¶ 18; Docket No. 79 at 3, ¶ 17. He also received correspondence from the adjuster explaining the reason for defendant's denial of the remainder of plaintiff's personal property claim. Docket No. 72 at 6, ¶ 19.

was damaged by drywall dust and debris that entered the room as a result of the vehicle's impact to the home. Docket No. 72 at 5, ¶ 14. On August 30, 2018, defendant denied plaintiff's personal property claim to the extent the claimed damage consisted solely of asbestos contamination because asbestos is not listed as a covered peril for personal property damage. Docket No. 71 at 7–8, ¶ 25.

On October 1, 2020, once defendant learned that plaintiff's fiancée used the HVAC system after the collision and after plaintiff and his fiancée were aware that the house was being tested for asbestos, defendant informed plaintiff that damages caused by neglect are also not covered under the policy. Docket No. 72 at 8, ¶ 26. In this correspondence, defendant referenced the depositions of certain individuals. Docket No. 75 at 5, ¶ 3.[9]

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001). Only disputes

---

[9] Defendant admits that it sent correspondence to plaintiff's lawyer on October 1, 2020, but disputes whether it offered a "new explanation" for its 2018 decision, *id.*, or rather restated its prior decision and, "based on new information provided during . . . depositions, . . . determined that the Policy's exclusion for damage caused directly or indirectly by the insured's neglect or failure to use all reasonable means to preserve property following the initial loss also precluded coverage." Docket No. 78 at 2–3, ¶ 3. The parties appear to agree, therefore, that defendant provided a new or additional justification for its coverage decision.

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS[10]

In his complaint, plaintiff brings claims for breach of contract, statutory bad faith, and common-law bad faith. Docket No. 3 at 3–4. Defendant argues that it is entitled to summary judgment on each of these claims because, "absent coverage for [p]laintiff's asbestos-related losses to personal property, he cannot establish an essential element of each of his three causes of action – that [defendant] wrongfully denied any benefits owed under the policy." Docket No. 71 at 9. Defendant contends that, because the policy did not cover asbestos-related losses, defendant was not obligated to pay plaintiff's claim and, since there was no coverage, there can be no breach. *Id.* at 9–10. As to plaintiff's bad faith claims, which require showing that denial of coverage was unreasonable, defendant argues that proper denial of the claims in accordance with the coverage terms of a policy is reasonable. *Id.* at 10. Finally, defendant argues that, even if the policy covered asbestos-related losses, plaintiff's losses are "excluded from coverage because they stem from [p]laintiff's failure to use reasonable means to prevent further spread of asbestos . . . beyond the initial impact area." *Id.*

Plaintiff moves for summary judgment on the breach of contract claim, arguing that defendant unreasonably denied his personal property claim on the theory that the damage was "somehow *not* caused by the impact of the vehicle into the property, breaking the wall, and disbursing asbestos dust and debris into the air inside [plaintiff's]

---

[10] Because jurisdiction is based on diversity, the Court applies Colorado law in resolving the motion. *See Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995) ("In a case in which jurisdiction is founded on diversity, we apply the law of the forum state."). The parties also assume that Colorado law applies. *See generally* Docket Nos. 71, 72, 74, 75.

9

home." Docket No. 72 at 8. The undisputed facts, plaintiff maintains, establish that but for the collision, which broke the drywall and spread asbestos directly into the HVAC vents, his personal property would not have been contaminated. *Id.*

### A. Breach of Contract Claim

In Colorado, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted).

The interpretation of an insurance policy is a legal question. *Pac. Specialty Ins. Co. v. Poirier*, 408 F. Supp. 3d 1241, 1246 (D. Colo. 2019) (citing *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002)). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Clauses or phrases should not be viewed in isolation; rather, a policy's meaning must be determined by examining the entire instrument. *Huizar*, 52 P.3d at 819. Policy provisions that are clear and unambiguous should be enforced as written. *Chacon*, 788 P.2d at 750. Where a term in an insurance policy is ambiguous, meaning it is susceptible to more than one reasonable interpretation, the Court will construe the term against the drafter and in favor of providing coverage to the insured. *Sachs v. Am.*

*Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010).

Defendant asserts that the policy limits its obligation to insuring personal property against "direct physical loss" that is "caused by" one of the named perils. Docket No. 71 at 11. Defendant makes three main arguments. First, defendant argues that the policy insures personal property against only a "direct physical loss" that is caused by a named peril and that plaintiff cannot show there is a genuine dispute that a named peril, i.e., impact from the vehicle, was the immediate or proximate cause of the contamination of personal property in rooms not directly impacted by the collision. *Id.* at 11–12. Second, defendant argues that plaintiff's use of the HVAC system was an intervening cause that broke the chain of causation from the vehicle collision to the contamination of personal property in rooms not directly impacted by the collision. *Id.* at 14–16. Third, defendant argues that the loss is excluded from coverage because plaintiff failed to mitigate the damage by not taking reasonable precautionary measures to prevent further loss by running the HVAC system. *Id.* at 16–18.

Plaintiff counters that the plain language of the policy indicates coverage for "sudden and accidental, direct, physical loss to tangible property if caused by a named peril." Docket No. 75 at 6 (quotation omitted). Plaintiff argues that the proximate and efficient cause of the spread of asbestos was the collision, which disbursed dust and debris containing asbestos into the home. *Id.* at 8. The spread of asbestos in the house, plaintiff argues, was not so remote as to exclude it from the policy. *Id.* at 9. Plaintiff also claims that the normal operation of the HVAC system was not an intervening cause because it is undisputed that plaintiff was not advised to shut down

11

the system until nearly three weeks after the collision. *Id.* at 9. Additionally, because plaintiff used the HVAC system regularly, plaintiff believes that it was foreseeable that he would continue to use it after the collision. *Id.* at 9–11. Plaintiff also highlights that defendant's expert agrees that it is realistic to expect someone in plaintiff's position who did not know of the asbestos contamination to continue to operate the HVAC system. *Id.* Thus, because plaintiff did not know that damage was occurring because of the HVAC system, plaintiff argues that it is unreasonable for defendant to exclude coverage for his alleged failure to mitigate damages. *Id.* at 11–12.

The parties' cross motions for summary judgment raise three issues. First, whether the asbestos contamination to plaintiff's personal property outside of the guest bedroom was a "sudden and accidental, direct, physical loss . . . caused by a listed peril," namely, a vehicle. Second, whether the asbestos contamination outside of the guest bedroom was loss "caused by or resulting from an impact with a motor vehicle." Third, the Court must determine whether the fiancée's use of the HVAC system violated the policy provision that the policyholder must protect the property from further damage.

The personal property provision of the policy covers "'sudden and accidental', direct, physical loss to tangible property . . . caused by . . . a peril listed below. . . .'" Docket No. 71-1 at 24. The policy defines "sudden and accidental" as "an abrupt, fortuitous event which is unintended from the perspective of a reasonable person." *Id.* at 12. The policy does not explain what constitutes a "direct" loss. There is no dispute, however, that damage to the dwelling and personal property immediately surrounding the collision site were direct losses. The question is whether the other personal property damage constitutes a "sudden and accidental, direct, physical loss."

The policy's definition of "sudden and accidental" as "an abrupt, fortuitous event which is unintended from the perspective of a reasonable person," *id.* at 12, indicates that the policy does not cover the personal property damage for which plaintiff seeks coverage. Although the policy does not define "abrupt," dictionaries define the word as "occurring suddenly, unexpectedly, or without warning," *abrupt*, *Oxford English Dictionary*, www.oed.com/view/Entry/607; "characterized by or involving action or change without preparation or warning," *abrupt*, *Merriam-Webster*, www.merriam-webster.com/dictionary/abrupt; "terminating or changing suddenly," *abrupt*, *Dictionary.com*, www.dictionary.com/browse/abrupt. This is consistent with the treatise *Couch on Insurance*, which notes that, "[t]he emerging majority rule is that the word 'sudden,' rather than just meaning that the discharge takes place unexpectedly, contains a temporal element meaning abrupt or happening within a short time span." *Id.* § 127:11 (considering "sudden" in context of pollution exlcusion). "Without such a temporal element, the term could be construed to include events happening gradually or over a long period of time." *Id.*[11] The policy language, dictionary definitions, and

---

[11] Some courts applying Colorado law have found "sudden and accidental" or "sudden accident" to be ambiguous phrases that could mean either "abrupt or immediate, or . . . unexpected and unintended." *See, e.g.*, *Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1191 (10th Cir. 2000); *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1092 (Colo. 1991). However, *Blackhawk* and *Hecla* are distinguishable because, unlike in those cases, where the insurance policies did not define the phrase, *see Blackhawk*, 214 F.3d at 1191; *Hecla*, 811 P.2d at 1090, the policy in this case defines "sudden and accidental" as "abrupt" and "fortuitous," *see* Docket No. 71-1 at 12, which means that the phrase is not "susceptible to more than one reasonable interpretation." *See Hecla*, 811 P.2d. at 1091. Moreover, *Hecla* does not hold "that . . . the phrase 'sudden and accidental direct physical loss to property' . . . means unexpected and unintended loss to the home." *Mock v. Allstate Ins. Co.*, 340 F. Supp. 3d 1087, 1090 (D. Colo. 2018), *aff'd*, 796 F. App'x 546 (10th Cir. 2020). Rather, the court "held that 'coverage for a sudden

13

*Couch on Insurance* all show that "sudden" is temporally limited, meaning that, in this case, the damage to the personal property must have occurred soon after the collision in order to be covered. The facts establish, however, that the damage to plaintiff's personal property in rooms otherwise unaffected by the collision did not occur suddenly. The collision, which damaged the guest bedroom of plaintiff's house and caused portions of the exterior wall to land directly on top of an HVAC supply vent, occurred on June 19, 2018. Docket No. 71 at 4–6, ¶¶ 8–9, 14; Docket No. 72 at 3, ¶ 4. Plaintiff's fiancée ran the HVAC system between June 25 and July 2. Docket No. 74 at 7, ¶ 12. The asbestos contaminated personal property in other rooms of the house sometime after June 25, which was six days after the collision. The facts therefore indicate that the damage was not "sudden." Courts in this district have held similarly. *See, e.g.*, *Mock*, 340 F. Supp. 3d at 1090 (interpreting "sudden and accidental direct physical loss," in accordance with its ordinary meaning, as "marked by or manifesting abruptness or haste" or "made or brought about in a short time" (quoting *sudden*, *Merriam-Webster*, www.merriam-webster.com/dictionary/ sudden)).

      The damage was also not a "direct" result of the collision. "Direct," as in "direct, physical loss," means "immediate" loss and excludes situations in which an intervening cause or force plays some role in the damage. *See Couch on Ins.* § 148:60. Here, the damage to plaintiff's personal property in rooms that otherwise had no collision-related damage occurred due to plaintiff's fiancée's use of the HVAC system days after the collision. The Court therefore agrees with defendant that the collision did not directly

---

and accidental event [wa]s inconsistent with th[e] policy's definition of an 'occurrence' as . . . 'continuous or repeated exposure'" and was therefore ambiguous. *Id.*

cause the loss that plaintiff seeks recovery for, namely, asbestos-damaged personal property in other rooms of the house, because the asbestos was spread through the HVAC system. Docket No. 71 at 13. The collision only "'set[] the stage' for [the] ensuing damage to occur." *Id.* at 14 (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 48 (2d Cir. 2006)). *Parks* concerned an insurance claim for damage caused by a cloud of hazardous particulate matter that contaminated a building in lower Manhattan following the 2001 collapse of the World Trade Center. 472 F.3d at 36. The court held that "the efficient cause of damage to the insured Building" was not the collapse of the World Trade Center, but "the actual contact of the airborne particulate matter with the [p]roperty." *Id.* at 49 (quotation omitted). By analogy, here the personal property loss would have been caused by the HVAC-borne asbestos, not by a car colliding with plaintiff's house. Plaintiff attempts to distinguish *Parks* by arguing that the insured's property in *Parks* was located several blocks away from the "site of the collision," i.e., the World Trade Center, unlike this case, where the collision was in the same house as the contaminated property. Docket No. 75 at 7–8. The Court does not find this argument convincing. Neither the Second Circuit nor the Southern District of New York mentioned that the distance between the World Trade Center and the damaged property had any bearing on whether the damage was a direct or an indirect result of the building collapse.

Plaintiff does not dispute that running the HVAC system caused the asbestos contamination of his personal property in other rooms of the house. Rather, he disputes when he knew the cause of the contamination and whether running his HVAC system after the collision was reasonable. *See, e.g.*, Docket No. 75 at 5–6, ¶¶ 4–5.

15

Plaintiff's knowledge and the reasonableness of his actions after the collision, however, are not relevant to the determination of the cause of the damage for which plaintiff seeks to recover. It is undisputed that it took at least between June 19, the date of the collision, and June 25, when plaintiff's fiancée first ran the HVAC system, for the asbestos to reach the other rooms of the house. Therefore, plaintiff has not identified a genuine dispute of material fact that the direct physical damage to plaintiff's personal property in the other rooms of the house was caused by the collision, rather than by the "infiltration" of those rooms by the asbestos and the "actual contact of the airborne particulate matter with the [p]roperty." *See Parks*, 472 F.3d at 36, 49. No reasonable jury could find otherwise.

The second issue in the parties' motions is whether, despite the policy terms discussed above, the covered peril clause provides coverage for plaintiff's personal property. The covered peril clause includes "[v]ehicles, meaning damage caused by or resulting from an impact with a 'motor vehicle.'" Docket No. 71-1 at 24. The vehicle peril language does not itself require that damage be "sudden and accidental" or "direct." *Id.* Instead, the damage need only be "caused by" or have "result[ed] from" an "impact" with a vehicle. *Id.* The policy does not define either "caused by" or "resulting in." *See generally id.* However, even if the terms "caused by" and "resulting from" are construed broadly, the vehicle peril language is nevertheless limited by the same prefatory phrase that restricts damage caused by "sudden and accidental, direct, physical loss." *Id.* at 24 ("We insure against 'sudden and accidental', direct, physical loss to tangible property . . . caused by a peril listed below."). As a result, even if the asbestos-related loss outside of the guest room was "caused by" or "resulted from" the

collision, it would not be covered by the policy because it was not "sudden and accidental, direct, physical loss."

Because the asbestos damage to personal property outside of the guest room was not covered under the policy, the Court need not consider the third issue that the parties' motions raise, namely, whether plaintiff's fiancée's use of the HVAC system violated the policy provision that the policyholder must protect the property from further damage. The Court, therefore, will grant defendant's summary judgment motion on the breach-of-contract claim and will accordingly deny plaintiff's motion.

### B.  Bad Faith Claims

Defendant also moves for summary judgment on plaintiff's statutory and common-law bad faith claims. Docket No. 71 at 9–10. The Court does not reach this argument because the Court has determined that defendant's denial of coverage was proper as a matter of law. *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192–93 (10th Cir. 2009) ("Having concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on [the plaintiff's] bad faith claim. It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage.") (citing *Tynan's Nissan, Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321, 326 (Colo. App. 1995); *M.L. Foss, Inc. v. Liberty Mut. Ins. Co.*, 885 P.2d 284, 286 (Colo. App. 1994), *overruled on other grounds by Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo. 2003); *Jarnagin v. Banker's Life and Cas. Co.*,

824 P.2d 11, 15 (Colo. App. 1991)); *Mock*, 340 F. Supp. 3d at 1092.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant USAA CIC's Motion for Summary Judgment [Docket No. 71] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Docket No. 72] is **DENIED**. It is further

**ORDERED** that all pending motions in this matter are **DENIED as moot**. It is further

**ORDERED** that this case is closed.

DATED: February 7, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge